IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 20/20 FORESIGHT, INC. as successor to PIERCE ABERDEEN CORPORATION d/b/a 20/20 FORESIGHT, and d/b/a/ 20-20 FORESIGHT EXECUTIVE MARKETING & JOB FINDING,<br><br>Plaintiff,<br><br>v.<br><br>PATRICIA GEORGE,<br><br>Defendant. | Case No. 20-cv-5310<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

20/20 Foresight, Inc., ("Plaintiff") brought this suit against its former independent contractor Patricia George ("Defendant"). After Defendant filed a motion to dismiss the original complaint [4], Plaintiff amended its complaint [9]. Defendant refiled its motion to dismiss [11]. For the reasons stated below, this motion [11] is denied. Counsel are directed to file a joint status report, including a joint discovery plan, no later than July 21, 2021.

**I.      Background[1]**

Plaintiff is a business engaged in the executive search industry, placing qualified executives with companies seeking their service. [9, at ¶ 1]. In January 2019, Defendant entered into an independent contractor agreement with Plaintiff to assist in performing executive searches and placing qualified candidates with client companies and client candidates at companies. [*Id.*, at ¶ 3]. According to Plaintiff, when Defendant began working for Plaintiff, Plaintiff issued her a

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

computer and told her not to alter the information stored on the computer, including on the hard drive. [*Id.*, at ¶ 5]. Plaintiff also alleges that it entrusted Defendant with trade secrets, including "candidate resumes, client company lists, computerized candidate and client company lists, and job orders." [*Id.*, at ¶ 7]. This information is "not publicly available," and Plaintiff generated it "through effort and expense building up its network and portfolio." [*Id.*, at ¶ 9]. Plaintiff protects this information by, for example, requiring independent contractors to "agree not to alter information stored on their computers" and by requiring the return of all "company-issued items that may have any records or documents." [*Id.*, at ¶¶ 10–11]. Plaintiff also requires independent contractors, including Defendant, to sign an agreement that includes confidentiality and non-competition provisions. [*Id.*, at ¶¶ 12–13, 17–18]. The agreement also required Defendant to "return and/or deliver to" Plaintiff "all records, Office Guidelines, books, notes, and any other documents relating to" Plaintiff's "confidential and proprietary information." [*Id.*, at ¶ 15].

In December 2019, Defendant's contract was terminated. [*Id.*, at ¶ 14]. When "Plaintiff returned her company issued computer it was wiped clean professionally, including the hard drive." [*Id.*, at ¶ 19]. Thereafter, Plaintiff began working for Hirewell, "a company attempting to break into the executive placement market." [*Id.*, at ¶ 18]. Plaintiff alleges that Hirewell hired Defendant "to obtain the trade secrets, and to utilize those Trade Secrets to unfairly compete with" Plaintiff. [*Id.*, at ¶ 18]. According to Plaintiff, Defendant and Hirewell are using the information that was on Defendant's laptop, and Defendant shared "confidential, proprietary information that was the subject of the confidentiality obligations in the Contract with Hirewell." [*Id.*, at ¶¶ 19, 22]. At Hirewell, Defendant works with "client companies or candidates" of Plaintiff's with whom Defendant "gained knowledge of during [her] term of employment" with Defendant. [*Id.*, at ¶ 20].

The complaint alleges that Defendant interfered with Plaintiff's current and prospective

clients either directly or by "providing information to Hirewell so that they could contact these Clients, and underbid[]" Plaintiff, "using Trade Secret information" in the process. [*Id.*, at ¶ 56]. Defendant also "interfered and prevented the realization of [Plaintiff's] business relationships through her communications with prospective and current Clients." [*Id.*, at 55]. Defendant's "interference actually damaged" Plaintiff "as current and prospective Clients ended negotiations" and Plaintiff "suffered a loss of the revenue from the prospective relationships." [*Id.*, at ¶ 57]. Plaintiff also alleges that Defendant's actions "induced the Clients to breach their contracts, not issue proper payment to" Plaintiff, and to take Plaintiff "off of jobs for which they had a valid contract." [*Id.*, at ¶ 50].

In its amended complaint, Plaintiff claims that Defendant (1) violated the Illinois Trade Secret Act, 765 Ill. Comp. Stat. 1065, (2) breached her contract with Plaintiff by violating the disclosure of confidential information provision and the non-competition clause, and (3) tortiously interfered with both existing contracts and a prospective economic advantage. [9, at ¶ 23–57]. Defendant moved to dismiss all claims [11].

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this

3

standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

III. **Analysis**

A. **Illinois Trade Secret Act**

Plaintiff alleges that Defendant violated the Illinois Trade Secrets Act ("ITSA"). [9, at ¶¶ 23–33]. A violation of ITSA occurs when there is "(1) a trade secret; (2) that was misappropriated; and (3) used in the defendant's business." *Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1152 (Ill. App. 2009). ITSA defines a trade secret as

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. 1065/2(d). "The existence of a trade secret ordinarily is a question of fact." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003). Defendant argues that Plaintiff fails to allege that that any trade secrets existed because it failed to (1) allege the trade secrets with sufficient specificity, (2) allege that any information was secret at all, (3) allege that the information was not generally known or ascertainable from public sources, and (4) allege that Plaintiff took sufficient steps to keep the information secret. All four arguments fail.

To begin, "[a]t the pleadings stage, plaintiffs can describe trade secret information in general terms." *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831 (N.D. Ill. 2019); see also *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (explaining

4

that "courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms" and collecting cases); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920–21 (N.D. Ill. 2001) ("Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F.Supp. 635, 636 (D. Del. 1991))). Here, Plaintiff alleges that Defendant misappropriated "candidate resumes, client company lists, computerized candidate and client company lists, and job orders." [9, at ¶ 7]. Many of the cases on which Defendant relies to argue that this does not identify alleged trade secrets with sufficient specificity are not rulings on motions to dismiss. [11, at 3–4]; see also *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1264 (7th Cir. 1992) (considering appeal of post-trial motions); *Cortez, Inc. v. Doheny Enters., Inc.*, 2017 WL 2958071, at *8 (N.D. Ill. July 11, 2017) (ruling on motion for preliminary injunction); *AutoMed Techs., Inc.*, 160 F. Supp. 2d at 920–21, 925–26 (finding that the plaintiff did not identify trade secrets with sufficient specificity to support a protective order but did plead facts sufficient to survive a motion to dismiss); *Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294, at *1 (E.D. Mich. Dec. 6, 2007) (ruling on motion for protective order).

Further, Defendant's cases involving motions to dismiss are distinguishable. The complaints in both *Carpenter v. Aspen Search Advisers, LLC*, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011), and *Bioquell, Inc. v. Feinstein*, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010), describe the alleged trade secrets with less specificity than Plaintiff does here. See Amended Counterclaim, *Carpenter*, 2011 WL 1297733 (No. 10-cv-683) (alleging appropriation of "business model, strategies, ideas and processes"); *Covenant Aviation Sec., LLC*, 15 F. Supp. 3d at 818–19

(distinguishing *Carpenter* on the same ground); *Bioquell, Inc.*, 2010 WL 4751709, at *6 (explaining that the plaintiff alleged that the defendant misappropriated "confidential and proprietary information which qualify as trade secrets" and failed to "identify these trade secrets"). Here, in contrast, Plaintiff alleges that its trade secrets include "candidate resumes, client company lists, computerized candidate and client company lists, and job orders." [9, at ¶ 7].

Next, Defendant argues that Plaintiff failed to allege that any information was secret. [11, at 3]. Plaintiff alleged that the information is "not publicly available" and instead built up through its "effort and expense." [9, at ¶ 9]. Defendant asserts that the complaint "provides no factual support for the legal conclusion that the names and contact information is not publicly available." [15, at 3]. But stating that information is not publicly available is not a legal conclusion—it is a factual allegation that, at this stage, the Court must assume is true. *Killingsworth*, 507 F.3d at 618. In a similar vein, Defendant suggests that the information is readily ascertainable from a public source and therefore not a trade secret. [11, at 4–5]. However, Plaintiff alleges that it built up its information through effort and expense, and "[i]nformation that is derived from public sources, but requires laborious accumulation, culling, and/or analysis of the public information can still qualify as a trade secret." *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 624 (N.D. Ill. 2007), adhered to in part on reconsideration, 2007 WL 2091020 (N.D. Ill. July 18, 2007); see also *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209, 216 (Ill. App. 1995), as modified (June 14, 1995) (finding that information was a trade secret when the plaintiff developed it "through the laborious method of prospecting, which requires a substantial amount of time, effort, and expense").

Defendant also argues that Plaintiff failed to allege reasonable efforts that it took to keep the information at issue confidential. However, Plaintiff alleged that it "took, and continues to

take, reasonable steps to protect the Trade Secrets including, without limitation, requiring its independent contractors to agree not to alter information stored on their computers, including the hard drive and return the company-issued software after the working relationship is terminated." [9, at ¶ 10]. Defendant acknowledges these allegations but insists that they're insufficient. [11, at 5]. However, ITSA requires that information be "the subject of efforts that are *reasonable under the circumstances* to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. 1065/2 (emphasis added). At this stage, the Court cannot conclude that the precautions described in Plaintiff's complaint are not reasonable under the circumstances as a matter of law. See *Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 190 F. Supp. 3d 812, 822 (N.D. Ill. 2016) (determining that the defendant's arguments that the plaintiff's precautions were unreasonable "fail at the pleading stage"); *Lawson Prod., Inc. v. Chromate Indus. Corp.*, 158 F. Supp. 2d 860, 865 (N.D. Ill. 2001) (declining to dismiss ITSA claim in part because the court could not evaluate whether the plaintiff exerted reasonable effort to protect its information until after more facts were developed); *cf. Learning Curve Toys, Inc.*, 342 F.3d at 725 (explaining that "only in an extreme case can what is a 'reasonable' precaution be determined [as a matter of law], because the answer depends on a balancing of costs and benefits that will vary from case to case" (alterations in original) (quoting *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir.1991)). As Defendants challenge no other element of the ITSA claim, the Court declines to dismiss it.

### B. Breach of Contract

Plaintiff alleges that Defendant breached her contract with Plaintiff by violating the disclosure of confidential information provision and the non-competition clause. [9, at ¶¶ 34–44]. In Illinois, the elements of a breach of contract claim are "(1) the existence of a valid and

enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004). Defendant argues that Plaintiff fails to state a claim for breach of contract because Plaintiff omitted any allegation of substantial performance, contending that in order to state a claim, Plaintiff must "plead that it paid [Defendant] all she was owed at the time of her termination." [11, at 2–3].

However, Plaintiff alleged that it "complied with each of its obligations under the Agreement, including any payment obligations," satisfying any need to plead substantial performance. [9, at ¶¶ 35, 40]. Requiring a more specific pleading would run counter to Rule 8's notice pleading standard. As the Seventh Circuit explained, "it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017); see also *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 942 (7th Cir. 2020) ("In our system of notice pleading, complaints need only plead facts sufficient to put defendants on notice of the claims against them."). Instead, "[i]t is enough to plead a plausible claim, after which 'a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint."'" *Chapman*, 875 F.3d at 848 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)). To the extent that Plaintiff is required to plead substantial performance, it adequately did so.

### C. Tortious Interference Claims

Plaintiff brings two tortious interference claims: tortious interference with a contract and tortious interference with an economic advantage. [9, at ¶¶ 45–57]. "The elements of a claim for tortious interference with an existing contractual relationship are (1) the existence of a valid

8

enforceable contract between the plaintiff and another; (2) the defendant's awareness of the relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." *Acoustical Surfaces, Inc. v. Vertetek Corp.*, 2014 WL 1379864, at *7 (N.D. Ill. Apr. 8, 2014) (internal quotation marks omitted). The elements of tortious interference with an economic advantage are: "(1) plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) defendant's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to plaintiff resulting from defendant's conduct." *F:A J Kikson v. Underwriters Lab'ys, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007). Thus, both claims have elements of intent and damages. Defendant argues that Plaintiff failed to plead either element. [11, at 6–7].

To establish intent, "a party must allege that the alleged tortfeasor directed wrongful conduct at a third party business prospect to induce the third party to end its relationship with the complaining party."[2] *Sunny Handicraft Ltd. v. Envision This!, LLC*, 2015 WL 231108, at *8 (N.D. Ill. Jan. 16, 2015). Here, Plaintiff alleged that Defendant contacted Plaintiff's current and prospective Clients either directly or by "providing information to Hirewell so that they could contact these Clients, and underbid[]" Plaintiff, "using Trade Secret information" in the process. [9, at ¶ 56]. Plaintiff also alleged that Defendant "interfered and prevented the realization of the business relationships through her communications with prospective and current Clients." [*Id.*, at 55]. In other words, Plaintiff alleged that Defendant directed wrongful conduct toward its clients in order to induce them to contract with Hirewell instead of Plaintiff. Those details adequately

---

[2] Defendant analyzes intent with respect to only the claim for tortious interference with a prospective economic advantage. However, this analysis also applies to the claim for tortious interference with a contract.

9

allege intent. See *Lawson Prod., Inc.*, 158 F. Supp. 2d at 866 (finding that the plaintiff adequately alleged "intentional interference" by alleging that the defendant sent plaintiff's former salespeople to "convert" plaintiff's customers to the defendant).

Defendant also argues that Plaintiff failed to adequately allege damages. Defendant acknowledges that Plaintiff alleged that Defendant's "interference actually damaged" Plaintiff "as current and prospective Clients ended negotiations" and Plaintiff "suffered a loss of the revenue from the prospective relationships." [11, at 6]; [9, at ¶ 57]. Plaintiff also alleged that Defendant's actions "induced the Clients to breach their contracts, not issue proper payment to" Plaintiff, and to take Plaintiff "off of jobs for which they had a valid contract." [9, at ¶ 50]. Defendant insists that the complaint nevertheless "lacks the bare-minimum pleading for damages for this tort: 'some specific facts demonstrating that it was harmed'" by Defendant. [11, at 6 (quoting *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 956 (N.D. Ill. 2016))]. However, Plaintiff stated that it was harmed by when clients breached their contracts and when prospective clients terminated their negotiations, causing lost revenue, thus satisfying this element. See *Lawson Prod., Inc.*, 158 F. Supp. 2d at 866 ("The loss of these customers constitutes harm. The complaint need not provide specific names of customers or amount of business lost.").

IV. **Conclusion**

For the reasons stated above, Defendant's motion to dismiss [11] is denied and Defendant's original motion to dismiss [4] is stricken as superseded and therefore moot. Counsel are directed to file a joint status report, including a proposed discovery plan, no later than July 21, 2021.

Dated: July 7, 2021

                                                                Robert M. Dow, Jr.
                                                                United States District Judge